UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| ANDELY KATHERINE GODOY GOMEZ, <br><br> Plaintiff, <br><br> v. <br><br> VICTOR HUGO MONTOYA VILLA, <br><br> Defendant. | Civil Action No. <br><br> 2:22-cv-139-RWS |

**O R D E R**

This case comes before the Court on Plaintiff's Verified Petition for Return of a Child ("Verified Petition") [Dkt. 1] and corresponding Motion for a Temporary Restraining Order ("TRO") [Dkt. 4]. Plaintiff, a citizen and resident of Venezuela, seeks the return of her 12-year-old minor son, S.G. Plaintiff brings this civil action pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act of 1988 ("ICARA"), 22 U.S.C. §§ 9001-- 9011.

Plaintiff's Verified Petition [Dkt. 1] was argued before the Court in a hearing held on July 26, 2022. Defendant did not appear at the hearing or send a representative on his behalf. At the hearing, Plaintiff asked the Court to order

Defendant to return S.G. to Venezuela, to extend the TRO into a preliminary injunction, and to grant Plaintiff attorneys' fees. After conducting a hearing and considering the record, the Court enters the following order.

## BACKGROUND

S.G. was born to Plaintiff and Defendant in 2010, in the Country of Venezuela. [Petition ¶ 6, Exhibit C (actual birth date redacted)]. Plaintiff and Defendant, who never married, were both residing in Venezuela at the time of S.G.'s birth.

Plaintiff is a citizen and current resident of Venezuela. [Petition ¶ 1]. S.G. has lived with Plaintiff since birth. [Petition ¶ 9]. The designated Judicial Circuit in Venezuela adopted the parties' agreement concerning parental custodial and access rights ("Venezuelan Custody Order") allowing Defendant access to S.G. "every fifteen days of the month" and requiring S.G.'s return to Plaintiff on Sunday of that weekend by 4:00 p.m. [Petition ¶¶ 7, 8, Exhibit D].

In August 2020, Defendant immigrated to the United States. [Petition ¶ 9]. Defendant and his wife currently reside in Oakwood City, Georgia, within the Northern District of Georgia. [Petition ¶ 9]. Defendant's immigration status (and the status of Defendant's wife) in the United States is unknown to Plaintiff. [Motion at 3].

2

Defendant provided continuous financial support until November 2022 and regularly exercised his access rights to S.G. under the governing Venezuelan Custody Order. [Petition ¶ 9]. Prior to August 2021, and continuing after Defendant moved to the United States, Defendant's visits with S.G. occurred in Venezuela. [Petition ¶ 9].

Plaintiff and Defendant agreed that S.G. could visit Defendant in the United States from August 10, 2021 through November 6, 2021. [Petition ¶¶ 12, 13]. Plaintiff secured a Judicial Travel Authorization for S.G. to make the trip to the United States to visit Defendant. [Petition ¶ 13, Exhibit F]. Defendant purchased a round-trip flight for S.G.'s visit with a departure date of August 14, 2021 and a return date of November 6, 2021. [Petition ¶ 14, Exhibit G]. On August 14, 2021, S.G. flew from Caracas, Venezuela, to Miami, Florida. [Petition ¶ 14]. Defendant met S.G. in Miami and they drove together from Miami to Oakwood City, Georgia. [Petition ¶ 14].

On September 24, 2021, Defendant sent a WhatsApp message to Plaintiff expressing an immediate need to speak with Plaintiff. [Petition ¶ 15]. The parties never had a discussion as Plaintiff's response on September 28, 2021 went unanswered. [Petition ¶ 15]. Plaintiff's subsequent attempts to reach Defendant and/or S.G. were also unsuccessful. [Petition ¶ 15].

On October 28, 2021, Defendant sent a message to Plaintiff stating that S.G. wanted to remain in the United States through Christmas. [Petition ¶ 16]. Between October 28, 2021 and January 31, 2022, Plaintiff's only communication with S.G. was indirect (i.e., through either Defendant or Defendant's wife or mother-in-law). [Petition ¶ 17].

Without the consent or acquiescence of Plaintiff, S.G. did not return to Venezuela on November 6, 2021 as anticipated. [Petition ¶¶ 18, 19]. S.G.'s travel authorization expired, and no request was made for an extension. [Petition ¶ 18].

On January 31, 2022, Plaintiff filed a Request for Return of the Child through the Venezuelan Central Authority. [Petition ¶ 20, Exhibit H].

This civil action was commenced by Plaintiff via Verified Petition [Dkt. 1] on July 19, 2022, requesting the following forms of relief: issuance of a TRO preventing Defendant (and other persons acting in concert or participating with Defendant) from taking any action to remove S.G. out of the jurisdiction of this federal district court or conceal S.G. from Plaintiff pending a determination on the Verified Petition, that the U.S. Marshal's Service be utilized to return the physical custody of S.G. to Plaintiff, that an expedited hearing on the merits of the Verified Petition be scheduled, that an Order directing Defendant to show cause at the hearing as to why S.G. should not be returned to Venezuela, and why such other

relief requested in the Verified Petition should not be granted, that the trial on the merits be advanced and consolidated with the hearing on the Verified Petition, entry of a Final Judgment entered in Plaintiff's favor establishing that S.G. shall return to Venezuela, where an appropriate custody determination can be made by a Venezuelan Court under Venezuelan law, and an Order awarding Plaintiff attorney's fees and costs, including, *inter alia*, expenses related to Plaintiff's travel, see 22 U.S.C. § 9007. [Petition § VIII]. The instant Motion for TRO [Dkt. 4] was filed simultaneously.

## DISCUSSION

### I. Plaintiff's Verified Petition for Return of a Child ("Verified Petition") [Dkt. 1]

The Court hereby grants Plaintiff's Verified Petition based on the evidence set forth in the record and Defendant's failure to contest the Verified Petition at the hearing.

The Hague Convention was adopted in 1980 and sought to address the problem of international child abductions stemming from domestic disputes. Abbott v. Abbott, 130 S. Ct. 1983, 1989 (2010); Baran v. Beaty, 526 F.3d 1340, 1344 (11th Cir. 2008). The United States has implemented the terms of the Convention through the ICARA. 22 U.S.C. §§ 9001--9011.

"The Convention seeks to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Gomez v. Fuenmayor, 812 F.3d 1005, 1010 (11th Cir. 2016) (citation and internal quotation marks omitted).[1] "Children who are wrongfully removed [or retained] under the provisions of the Convention shall be promptly returned unless one of the exceptions provided in the treaty applies." Galli v. Marques, 2021 WL 2829018, at *1 (M.D. Fla. March 5, 2021) (citing 22 U.S.C. § 9001(a)(4)). "The Convention does not provide for a determination of custody rights or the merits of a custody dispute; [rather,] its underlying premise is that the child[ren]'s country of habitual residence is the proper forum with jurisdiction to issue custody orders." Id. (quoting Leslie v. Noble, 377 F. Supp. 2d 1232, 1238 (S.D. Fla. 2005)) (internal quotation marks omitted). In other words, in adjudicating a verified petition alleging wrongful removal or retention, a court does not resolve disputes or questions of custody and is limited to determining rights under the Convention, i.e., whether the child was wrongfully removed or

---

[1] For purposes of the Convention, "habitual residence" is defined as "the place where [the child] has been physically present for an amount of time sufficient for the acclimatization and which has a 'degree of settled purpose' from the child's perspective." Pesin v. Rodriguez, 77 F. Supp. 2d 1277, 1284 (S.D. Fla. 1999) (citations omitted).

retained. See 22 U.S.C. § 9001(b)(4); and see Gomez, 812 F.3d at 1011 (citing Abbott, 130 S. Ct. at 1989) ("The central feature of the Convention is the return remedy by which a wrongfully [retained] child is to be repatriated to her home country for custody determinations."). Thus, "[w]hen a child has been wrongfully removed from his country of habitual residence, the Convention provides the non-abducting parent with a remedy of return, intended to restore the parties to the pre-abduction status quo and deter parents from crossing borders in search of a more sympathetic forum for child custody proceedings." Gomez, 812 F.3d at 1011 (quoting Baran, 526 F.3d at 1344).

A Plaintiff seeking the return of a child bears the burden of proving wrongful removal or retention by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1). Under the Hague Convention, the removal or retention of a child is wrongful when:

> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Mendoza v. Salado, 2021 WL 3508690, at *2 (N.D. Ga. May 3, 2021) (citing Hague Convention, Article 3). "If the Plaintiff meets this burden, then the Defendant opposing the child's return bears the burden of establishing the applicability of one of the exceptions or affirmative defenses provided in Articles 12, 13, or 20 of the Hague Convention." Id. (citing 22 U.S.C. § 9003(e)(2)). "If the Defendant is unsuccessful in raising one of these defenses, the court must order the return of the wrongfully removed or retained child. The defenses, however, are to be narrowly construed and, even if proven, do not automatically preclude an order of return." Id. (citing Baran, 526 F.3d at 1345).

The Court finds that Plaintiff met her burden of proving wrongful removal or retention by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1); see Mendoza, 2021 WL 3508690, at *2. Plaintiff produced evidence showing that, when Defendant failed to return S.G. at the agreed upon time, he violated her custody rights as established by a court in Venezuela, S.G.'s country of habitual residence. [See Dkt. 1, at ¶¶ 12-17, 22, Exs. C, D, E]; [see also Dkt. 4, at 3-4, Exs. F-G]. Defendant then failed to prove that he was not obligated to return S.G. under "one of the exceptions or affirmative defenses provided in Articles 12, 13, or 20 of the Hague Convention." Mendoza, 2021 WL 3508690, at *2 (citing 22 U.S.C. § 9003(e)(2)). As Defendant failed to raise any defenses to Plaintiff's petition, the

Court must grant Plaintiff's Verified Petition [Dkt. 1] and order S.G.'s return to Venezuela.

## II.     Plaintiff's Request to Extend the TRO into a Preliminary Injunction

In a recent order, the Court found that Plaintiff was entitled to a TRO under the Hague Convention and ICARA. [See Dkt. 8]. For the same reasons, the Court grants Plaintiff's request to extend the TRO into a preliminary injunction.

### A. Legal Standard

Recognizing the exigent circumstances presented, the Hague Convention and ICARA authorize expedited proceedings.  Hague Convention, Articles 4, 12; 42 U.S.C. §§ 11603(a)(4) (requiring a child "wrongfully removed or retained within the meaning of the Convention" to be "promptly returned"). In addition, the availability of and need for emergency, temporary injunctive relief is also contemplated when deemed necessary "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition."  22 U.S.C. § 9004(a). Subsection 9004(b) prohibits removing a child from "a person having physical control of the child unless the applicable requirements of state law are satisfied."  22 U.S.C. § 9004(b).

Under Rule 65 of the Federal Rules of Civil Procedure, the standard for injunctive relief applies equally to requests for a TRO and/or a preliminary

injunction. See FED. R. CIV. P. 65. To obtain injunctive relief, Plaintiff must demonstrate "that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008); accord KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006); see also Mendoza, 2021 WL 3508690, at *3 (citation omitted) (injunctive relief not appropriate unless movant clearly establishes burden of persuasion as to all four factors).

### B. Analysis

The Court will grant Plaintiff's request to extend the TRO because she satisfied her burden of proof under FED. R. CIV. P. 65. First, Plaintiff proved that she is likely to succeed on the merits of her claim by putting forth evidence showing that Defendant wrongfully retained S.G. after November 6, 2021 in violation of Article 3 of the Hague Convention. [Dkt. 8, at 9-11]. Plaintiff also showed that she will suffer irreparable harm in the absence of injunctive relief because, if Defendant escapes the Court's jurisdiction with S.G., the aims of the Hague Convention and ICARA would be thwarted. See Mendoza, 2021 WL

3508690, at *3 (quoting Application of McCullough on Behalf of McCullough, 4 F. Supp. 2d 411, 416 (W.D. Pa. 1998)).

Finally, Plaintiff showed that "the balance of equities tips in [her] favor, and that an injunction is in the public interest." Winter, 129 S. Ct. at 374. It is most equitable to extend the TRO so that Defendant cannot remove S.G. from the Court's jurisdiction and/or conceal S.G. from Plaintiff indefinitely. It is also in the public's best interest to extend the TRO because it will preserve

> the status quo and provid[e] a forum for [Plaintiff, Defendant,] and S.G. (if appropriate) an opportunity to be heard on the merits of the Verified Petition. This is turn will "serve[e] the primary purposes of the Hague Convention . . .  [and] could facilitate a mutually agreeable resolution that enables both [Plaintiff and Defendant] to exercise their access rights and co-parent S.G. . . . .

[Dkt. 8, at 13].

## CONCLUSION

For the above reasons, the Court grants Plaintiff's Verified Petition [Dkt. 1]. and Plaintiff's request to extend its TRO into a preliminary injunction.

Defendant is hereby **ORDERED** to do the following: Within **ten (10) days** of this Order's entry, Defendant is **ORDERED** to return S.G. to Plaintiff in Venezuela. Defendant is responsible for all costs of the return. Such costs include, but are not limited to, passport reinstatement fees, plane tickets, and the like. Defendant is further **ORDERED** to communicate with Plaintiff's counsel to create

a return plan that is in the best interests of S.G. If Defendant fails to comply with any directive in this Order, he will be found to be in contempt of the Court and will be subject to sanctions as this Court sees fit. Plaintiff's counsel will have Defendant personally served with this Order.

The Court also **GRANTS** Plaintiff's request for attorneys' fees. Plaintiff should submit a statement of fees within **ten (10)** days of this Order's entry. Defendant may file any objections within **five (5)** days of Plaintiff's submission.

Finally, the Court reminds the parties that, at the heart of this dispute, lies the safety and well-being of a child. It is imperative that the parties and their representatives keep S.G.'s best interests at the forefront when effecting his return to Venezuela. S.G. will be best served if both parties communicate with one another and work together to ensure his safe return.

**SO ORDERED** this 26th day of July, 2022.

_____
**RICHARD W. STORY**
United States District Judge